IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| MICHAEL BROWN,<br><br>    Plaintiff,<br><br>    v.<br><br>KELVIN MOORE,<br><br>    Defendant. | CIVIL ACTION NO.: 5:22-cv-32 |

### REPORT AND RECOMMENDATION

Defendant Kelvin Moore filed a Motion for Summary Judgment on June 6, 2023, construed as a Motion to Dismiss.[1]  Doc. 17.  Plaintiff filed a Response.  Doc. 19.  For the following reasons, I **RECOMMEND** the Court **GRANT** Defendant's construed Motion to Dismiss and **DISMISS without prejudice** Plaintiff's Complaint for failure to exhaust administrative remedies.  Finally, I **RECOMMEND** the Court **DIRECT** the Clerk of Court to

---

[1] Defendant's Motion is docketed as a Motion for Summary Judgment; however, Defendant argues dismissal is appropriate because Plaintiff failed to exhaust his administrative remedies.  See Doc. 17 at 11–15.  In the Eleventh Circuit, exhaustion of administrative remedies is a matter in abatement that generally does not address the merits of the case.  Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); see also Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (The first step of Turner "is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c)").  Thus, the exhaustion defense "is not ordinarily the proper subject for a summary judgment" but instead "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."  Id. at 1374–75.  Because the defendant must raise exhaustion in a motion to dismiss, the Eleventh Circuit treats failure to exhaust as an unenumerated defense pursuant to Federal Rule of Civil Procedure 12(b).  Id. at 1375 (holding "exhaustion should be decided on a Rule 12(b) motion to dismiss" even though "motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b)").  For this reason, I construe this portion of Defendant's Motion for Summary Judgment as a Rule 12(b) motion to dismiss for failure to exhaust administrative remedies.

enter the appropriate judgment of dismissal and **DENY** Plaintiff *in forma pauperis* status on appeal.[2]

## BACKGROUND

Plaintiff filed this action asserting claims under 42 U.S.C. § 1983 on June 7, 2022. Doc. 1. During all relevant times, Plaintiff was an inmate at the Coffee Correctional Facility ("CCF"). Plaintiff alleges the named Defendants violated his First Amendment constitutional rights by retaliating against him for filing a grievance and request for protective custody by initiating a transfer to another housing unit. Id. at 3–4. Plaintiff requests monetary and injunctive relief. Id. at 5. After frivolity review of Plaintiff's Complaint, the Court dismissed all claims against Defendants Danforth, Stone, and Gay but allowed the retaliation claim against Defendant Moore to proceed. Doc. 9.

Plaintiff's only pending claim—the retaliation claim against Defendant Moore—can be summarized as follows. Plaintiff alleges Defendant Moore (a prison guard) threatened Plaintiff during a conversation on March 15, 2022.[3] Plaintiff asserts he filed a grievance on March 21,

---

[2] A "district court can only dismiss an action on its own motion as long as the procedure employed is fair . . . . To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted). A magistrate judge's report and recommendation provides such notice and opportunity to respond. See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating a party has notice of a district court's intent to sua sponte grant summary judgment where a magistrate judge issues a report recommending the sua sponte granting of summary judgment); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting report and recommendation served as notice claims would be sua sponte dismissed). This Report and Recommendation constitutes fair notice to Plaintiff his suit is due to be dismissed. As indicated below, Plaintiff will have the opportunity to present his objections to this finding, and the presiding district judge will review de novo properly submitted objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Glover v. Williams, No. 1:12-CV-3562, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining magistrate judge's report and recommendation constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

[3] The specific threat made is not germane to the issues addressed in this Report, and it is disputed whether Defendant Moore ever made a threat. Therefore, this description of the threat is provided only

2

2022, about Defendant Moore's threat.  Plaintiff states he asked to be placed in protective custody in the March 21, 2022 grievance.[4]  Plaintiff alleges Defendant Moore retaliated against Plaintiff because he filed the March 21, 2022 grievance.  Specifically, Plaintiff alleges he was ordered to move to another housing unit and was denied protective custody as retaliation.  To be clear, Plaintiff's pending claim is not directly based on the alleged threat Defendant Moore made on March 15, 2022.  Plaintiff's pending claim is based on Defendant Moore allegedly retaliating against Plaintiff because Plaintiff filed the March 21, 2022 grievance.

Plaintiff's March 21, 2022 grievance was denied on April 21, 2022, and Plaintiff appealed the denial on April 28, 2022.  Doc. 17-4 at 37–39.  Plaintiff's appeal was rejected on May 10, 2022.  Id. at 36.

Plaintiff filed a second grievance on May 13, 2022.  Id. at 46.  In the May 13, 2022 grievance, Plaintiff stated he spoke to Ms. Clemens (Plaintiff's case manager) about Plaintiff's request to be placed in protective custody.  Plaintiff stated in the grievance Defendant Moore denied Plaintiff's request for protective custody.  Plaintiff also mentioned the threat Defendant Moore allegedly made on March 15, 2022, and the fact Plaintiff had filed a grievance about the threat.  Plaintiff did not expressly state Defendant Moore was retaliating against him in the May 13, 2022 grievance, though it is implied.

---

for context.  Plaintiff alleges he asked Defendant Moore for a lock during an inmate count.  Plaintiff alleges Defendant Moore responded with some words like, "[I]f you keep bothering me, you will need a lock."  Plaintiff alleges Defendant Moore did not elaborate on the statement.  Plaintiff believed Defendant Moore's comment was a reference to inmates using locks as weapons against one another, and Defendant Moore's comment suggested Plaintiff would need a lock to protect himself from other inmates.

[4]     Defendant provided a copy the March 21, 2022 grievance with his Motion.  Doc. 17-4 at 40.  Plaintiff did complain about the alleged threat made by Defendant Moore, but Plaintiff did not request protective custody in that grievance.  Instead, Plaintiff asked to be transferred to another prison.

3

Plaintiff filed his Complaint while the second grievance was still pending. Doc. 1 (signed on June 2, 2022, postmarked on June 3, 2022, and received by the Court on June 7, 2022). Plaintiff filed a third grievance on June 4, 2022. Doc. 17-4 at 56. On June 30, 2022, nearly a month after Plaintiff filed his Complaint, Plaintiff's second grievance was denied for lack of evidence. Id. at 45. Plaintiff did not appeal this denial. On July 13, 2022, Plaintiff's third grievance was denied. Id. at 55. Plaintiff did not appeal this denial.

Defendant Moore filed this Motion for Summary Judgment on June 6, 2023. Doc. 17. In his Motion, Defendant Moore argues: Plaintiff cannot recover on his claim because Plaintiff has not adequately established a First Amendment retaliation claim; Plaintiff's request for injunctive relief is moot; and Plaintiff's claims should be dismissed because he failed to exhaust his administrative remedies before filing. Id. at 10–15.

Plaintiff's Response only includes a "Statement of Material Facts," in which he describes his initial interaction with Defendant Moore. Doc. 19. Plaintiff's Response does not address any of Defendant Moore's arguments regarding the elements of Plaintiff's First Amendment retaliation claim, mootness, or exhaustion of administrative remedies.

## DISCUSSION

### I.  Plaintiff's Failure to Exhaust

Defendant argues Plaintiff's Complaint should be dismissed because Plaintiff failed to exhaust his administrative remedies prior to suing Defendant, as the Prison Litigation Reform Act ("PLRA") requires. Doc. 17 at 11–15. Plaintiff filed two grievances related to the allegations in his Complaint—the second and third grievances are from May 13, 2022 and June 4, 2022. Defendant Moore argues Plaintiff did not appeal his second grievance at all and did not file the third grievance until after Plaintiff filed his Complaint. Id. at 14.

A.      **PLRA's Exhaustion Requirements**

Under the PLRA, an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 578 U.S. 632, 639–40 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530

5

F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))).  "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)).  An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

The procedural steps prisoners must follow to fully exhaust are set out by their prison's administrative grievance policies. Jones, 549 U.S. at 218; Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 202 (11th Cir. 2018) ("To satisfy the exhaustion requirement, a prisoner must

complete the administrative process in accordance with the applicable grievance procedures established by the prison."). Proper exhaustion requires prisoners do more than simply initiate a grievance; they must correctly follow all procedural rules set out in the institution's policy—including time limits—and must appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Johnson, 418 F.3d at 1159 ("Prisoners must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures before filing a federal claim."); Sewell, 2007 WL 201269, at *4 (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B.     Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA. . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari, 729 F. App'x at 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 578 U.S. at 642 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id.; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is

required to exhaust. . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 642. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Secondly, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 578 U.S. at 642. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id.; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion

does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a).  541 F.3d at 1082.  First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero, 2018 WL 3861351, at *1.  This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824.  "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion.").  After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209).  Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of

9

Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

    **C.**    **Applying Turner**

        **1.**    ***CCF's administrative remedy policy.***

At CCF, if an inmate alleges a violation of his civil rights, the inmate is referred to the formal grievance system. Doc. 17-4 at 1. Inmates are required to file a written grievance within ten days of discovery or when he reasonably should have discovered the incident. Id. at 14. Once an inmate receives a formal response to the grievance, the inmate has seven calendar days to accept the findings and action taken or file a Central Office Appeal. Id. at 20. If an inmate chooses to appeal the decision, he must send an appeal via the grievance kiosk or fill out and sign the Central Office Appeal Form and give it to his counselor. Id.

        **2.**    ***Plaintiff failed to exhaust his administrative remedies.***

Defendant argues Plaintiff did not appeal his grievances related to his allegations Defendant Moore retaliated against Plaintiff for filing a previous grievance, relying on an affidavit from Grievance Coordinator Eva Harrell. Id. at 4. Harrell testifies after reviewing the grievances submitted by Plaintiff, there is no record of Plaintiff appealing the two grievances related to the alleged retaliation by Defendant Moore. Id. Similarly, Defendant Moore argues Plaintiff's Complaint contains the same allegations as contained in his second grievance, which Plaintiff never appealed, and his third grievance, which Plaintiff did not file until after he filed his Complaint. Doc. 17 at 14. Plaintiff does not respond to Defendant's arguments in his

10

Response.  Instead, Plaintiff describes again the initial interaction with Defendant Moore when Plaintiff alleges Defendant Moore threatened him.

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Turner, 541 F.3d at 1080–82.  Plaintiff's allegations and Defendant Moore's allegations do not conflict, as Plaintiff failed to address any of Defendant's failure to exhaust administrative remedies argument.  Based on Plaintiff's Response, there is no genuine dispute of material fact regarding Plaintiff's failure to exhaust.

However, to give Plaintiff the full benefit of this approach, the Court considers Plaintiff's factual allegations concerning exhaustion in his Complaint.  See, e.g., Butler v. Flenory, No. 5:13-CV-9, 2014 WL 4629163, at *1 (M.D. Ga. Sept. 15, 2014); Barner v. Sasser, No. 5:16-CV-319, 2018 WL 7075196, at *5 (N.D. Fla. Dec. 10, 2018), report and recommendation adopted, 2019 WL 251484 (N.D. Fla. Jan. 17, 2019); McKenzie v. Staten, No. 6:17-CV-83, 2020 WL 5638621, at *10 (S.D. Ga. Sept. 3, 2020), report and recommendation adopted, 2020 WL 5637085 (S.D. Ga. Sept. 21, 2020) (all considering allegations in the plaintiff's complaint or amended complaint at Turner step one).

In his Complaint, Plaintiff contends he filed a grievance in March 2022 and appealed the denial of this grievance on April 28, 2022.  Doc. 1 at 4.  However, Plaintiff's allegations demonstrate he did not properly exhaust his administrative remedies as to the two grievances related to the allegations in his Complaint.  The grievance Plaintiff filed on March 21, 2022, was about Defendant Moore threatening him after Plaintiff requested a lock.  Doc. 17-4 at 3.  This is not a grievance about Defendant Moore's retaliation, which is the basis for Plaintiff's claim in this case.  The grievances filed on May 13, 2022 and June 4, 2022, were related to Defendant

11

Moore's alleged retaliation for Plaintiff filing the initial March 21, 2022 grievance. Id. at 4. But Plaintiff did not appeal the denial of the May 13, 2022 grievance, and the June 4, 2022 grievance was not filed until after Plaintiff filed his Complaint. Plaintiff does not dispute these facts.

Taking Plaintiff's version of the facts as true, Plaintiff did not properly exhaust his administrative remedies in accordance with CCF policy as to Defendant Moore. Plaintiff did not appeal the two grievances related to the allegations in his Complaint. Plaintiff filed his Complaint before appealing the May 13, 2022 grievance and before even filing the June 4, 2022 grievance. Thus, Plaintiff's failure to properly appeal his grievances constitutes failure to exhaust his administrative remedies. Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) ("When a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit.").

Therefore, Plaintiff failed to exhaust his administrative remedies as to the events giving rise to his Complaint under step one of Turner. Consequently, I **RECOMMEND** the Court **GRANT** this portion of Defendant's Motion and **DISMISS** Plaintiff's Complaint based on his failure to exhaust his administrative remedies.[5]

II. **Leave to Appeal** *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has, of course, not yet filed a notice of appeal, it is proper to address this issue in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (noting trial court may certify an appeal of party

---

[5] Defendant Moore also makes arguments related to Plaintiff's injunctive relief and failure to establish a First Amendment retaliation claim. However, Defendant prevails on the failure to exhaust administrative remedies issue and there is no need to address the remaining arguments. Accordingly, the Court declines to address the mootness and First Amendment retaliation arguments in this case.

proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact." Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 4:07-cv-085, 40:3-cr-001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendant's construed Motion to Dismiss, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendant's construed Motion to Dismiss, **DISMISS without prejudice** Plaintiff's Complaint for failure to exhaust administrative remedies, and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. I further **RECOMMEND** the Court **DENY** Plaintiff *in forma pauperis* status on appeal.

13

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  <u>Harrigan</u>, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 4th day of March, 2024.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA